IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MOSAID TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-698 (GMS) |
| | ) | |
| VMWARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT VMWARE, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO
TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**

**YOUNG CONAWAY STARGATT
& TAYLOR, LLP**
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Attorneys for VMware, Inc.*

*Of Counsel:*
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
I. Neel Chatterjee
Karen G. Johnson-McKewan
Monte M.F. Cooper
Stacey E. Stillman
Jason K. Yu
1000 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 614-7400

Dated: December 17, 2012

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    NATURE AND STAGE OF THE PROCEEDING........................................... 2

III.   SUMMARY OF ARGUMENT ......................................................................... 3

IV.    STATEMENT OF FACTS ................................................................................ 4

ARGUMENT ................................................................................................................ 6

V.     THIS ACTION BELONGS IN THE NORTHERN DISTRICT OF CALIFORNIA ........ 6

    A.     When A Clearly More Convenient Forum Exists, The Action Should Be
           Transferred Under 28 U.S.C. § 1404(a)................................................. 8

    B.     The Private And Public Factors Favor Northern California ................................. 9

        1.     Plaintiff's Original Choice of Forum ......................................... 9

        2.     Defendant's Preference of Forum ............................................. 11

        3.     Location Where the Claim Arose ............................................. 11

        4.     Convenience of the Parties ....................................................... 12

        5.     Convenience of Witnesses ....................................................... 14

        6.     Location of Books, Records and Evidence ............................... 18

        7.     Enforceability of Judgment ...................................................... 18

        8.     Practical Considerations ........................................................... 19

        9.     Court Congestion ...................................................................... 19

        10.    Local Interest and Public Policy .............................................. 19

        11.    Familiarity With Applicable State Law in Diversity Cases..................... 20

        12.    Balancing of Factors ................................................................. 20

CONCLUSION............................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affymetrix, Inc. v. Syntenti, Inc.*,
    28 F. Supp. 2d 192 (D. Del. 1998)............................................................................13

*Angiodynamics, Inc. v. Vascular Solutions, Inc.*,
    No. 09-554-JJF, 2010 WL 3037478 (D. Del. Jul. 30, 2010) ................................13

*In re Apple, Inc.*,
    602 F.3d 909 (8th Cir. 2010) ...............................................................................9

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*,
    295 F. Supp. 2d 393 (D. Del. 2002).......................................................................13

*Arrow Communication Labs., Inc. v. John Mezzalingua Assoc., Inc.*,
    No. 05-357-SLR, 2005 WL 2786691 (D. Del. 2005) .............................................14

*Ballard Med. Prods. v. Concord Labs., Inc.*,
    700 F. Supp. 796 (D. Del. 1988).............................................................................7

*Boram Pharm. Co., Ltd. v. Life Tech. Corp.*,
    No. 10-31, 2010 WL 2802727 (D. Del. Jul. 14, 2010) .........................................13

*Dahl v. United Technologies Corp.*,
    632 F.2d 1027 (3d Cir. 1980)................................................................................9

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)......................................................................15, 18

*General Instrument Corp. v. Mostek Corp.*, 417 F. Supp. 821 (D. Del. 1976) ............................12

*Intellectual Ventures I LLC v. Altera Corp.*,
    842 F. Supp. 2d 744 (D. Del. 2012)........................................................................8

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995)......................................................................... *passim*

*Kondrath v. Arum*,
    881 F. Supp. 925 (D. Del. 1995)..........................................................................19

*In re Link_A_Media Devices Corp.*,
    662 F.3d 1221 (Fed. Cir. 2011)..................................................................... *passim*

*Meikki Co., Ltd. v. Facebook, Inc.*,
No. 09-745 (JAP), 2010 WL 2348740 (D. Del. Jun. 7, 2012)................................................14

*Mentor Graphics v. Quickturn Design Sys., Inc.*,
77 F. Supp. 2d 505 (D. Del. 1999)........................................................................................14

*Network Caching Technologies, LLC v. Novell Inc., et al*,
Case No. C-01-2079-VRW (N.D. Cal.)................................................................................6, 19

*Nilssen v. Everbrite, Inc.*,
No. 00-189-JJF, 2001 WL 34368396 (D. Del. Feb. 16, 2001) ...........................................7, 14

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981)..........................................................................................................9, 10

*Pragmatus AV, LLC v. YahooA Inc.*,
No. 11-902-LPS-CJB, 2012 WL 4889438 (D. Del. Oct. 15, 2012)............................10, 11, 12

*QinetiQ Ltd. v. Oclaro, Inc.*,
No. 09-372-CJAP, 2009 WL 5173705 (D. Del. Dec. 18, 2009)...........................................13

*Ricoh Co. v. Honeywell, Inc.*, 817 Supp. 473 (D.N.J. 1993) .............................................12

*Shutte v. Armco Steel Corp.*,
431 F.2d 22 (3d Cir. 1970).................................................................................................7, 8

*Virgin Wireless, Inc. v. Virgin Enterprises, Ltd.*,
201 F.Supp. 2d 294 (D. Del. 2002)......................................................................................3, 9

*Wacoh Co. v. Kionix Inc.*,
845 F. Supp. 2d 597 (D. Del. 2012)........................................................................................14

*Walters v. Beavers*,
No. 89-696-JJF, 1991 U.S. Dist. LEXIS 1432 (D. Del. Feb. 6, 1991) .................................19

**Statutes**

28 U.S.C.
§§ 1391(b)..............................................................................................................................6
§ 1391(c)................................................................................................................................6
§ 1400(b)................................................................................................................................6
§ 1404(a) ........................................................................................................................ *passim*

35 U.S.C.
§ 271(a) ................................................................................................................................11
§ 1400(b)..............................................................................................................................3, 6

Fed. R. of Civ. P. Rule 12(b)(6)...............................................................................................1

**Other Authorities**

15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND
    PROCEDURE: JURISDICTION AND RELATED MATTERS § 3847 (2d. ed. 1986)..........7

17 James Wm. Moore, et al.
    MOORE'S FEDERAL PRACTICE § 113.13[1][c][ii] (3d ed. 1997)....................................11

## I.    INTRODUCTION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C.

§ 1404(a), VMware, Inc. ("VMware") respectfully moves the Court to transfer this action to the

United States District Court for the Northern District of California.  Plaintiff MOSAID

Technologies, Inc. ("MOSAID ") has no connection to the District of Delaware, and asserted its

claims here only because VMware and six other now-dismissed defendants are all incorporated

in this state.  VMware has no ties to this state other than its incorporation.  The Federal Circuit

has held that incorporation is an insufficient basis, on its own, to maintain venue in Delaware.

*In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011) (ordering transfer from

Delaware to California, where events occurred and witnesses were located notwithstanding

incorporation in Delaware).

In addition, the transfer factors weigh strongly toward the Northern District of California

as the proper venue for this action.  VMware's global headquarters is located in Palo Alto,

California.  Declaration of Daniel Lin in Support of Defendant VMware's Motion to Transfer

Venue to the Northern District of California, ("Lin Decl.") ¶ 2.  Key witnesses are in the

Northern District of California or within the 100 mile subpoena reach of that district, including

the named inventors of the asserted patents and related patents, authors of prior art to the asserted

patents, the original prosecuting attorney of the asserted patents, and third party company

witnesses with knowledge relevant to MOSAID's lack of standing to assert the patents against

anyone, including VMware.  Also located in the Northern District of California are VMware

witnesses relevant to product development, functionality, and sales related to the accused

products.  *Id.* ¶ 3.  Sources of proof, including documents and VMware's accused GemFire

servers, are also located in the Northern District of California. *Id.* ¶ 4.

Because the Northern District of California is a more appropriate forum than Delaware, VMware moves to transfer this case.

## II.     NATURE AND STAGE OF THE PROCEEDING

MOSAID initiated this action on August 9, 2011.  D.I. 1.  MOSAID filed its Complaint just before the joinder rules of the America Invents Act took effect.  MOSAID accused seven unrelated parties, including VMware, of infringing two patents related to network "caching" technologies, U.S. Patent No. 6,505,241 (the " `241 Patent"), and U.S. Patent No. 5,892,914 (the " `914 Patent").

Defendants brought to MOSAID's attention that the claim under the `241 patent was improper because the patent had been disclaimed.  Thereafter, on October 6, 2011, MOSAID filed the First Amended Complaint.  MOSAID entirely dropped its claims under the disclaimed `241 Patent and also dropped all of its allegations against one defendant, NetApp.  *See* D.I. 16 ("First Amended Complaint").  MOSAID maintained its allegations under the `914 patent against the remaining six defendants.

With regard to VMware, MOSAID alleged that VMware infringed the `914 Patent "directly, indirectly, literally, under the doctrine of equivalents, contributorily, and/or through the inducement of others" with respect to the "VMware vFabric GemFire Platform and related GemFire servers."  First Amended Complaint at ¶¶ 27-28.  Very generally, VMware's vFabric GemFire Platform is a distributed data management platform that provides access to data in support of modern enterprise and cloud applications.

MOSAID has since settled with defendants Adobe Systems, Inc., Alcatel-Lucent USA, Inc. International Business Machines Corp. (IBM), Juniper Networks, Inc., and Red Hat, Inc. VMware is the sole remaining defendant in this case.

MOSAID seeks damages and injunctive relief, including increased damages for alleged willful infringement.

## III.    SUMMARY OF ARGUMENT

1.   VMware respectfully requests that the Court transfer this action to the Northern District of California.  Though VMware is incorporated in Delaware, incorporation is an insufficient basis, on its own, to maintain venue in Delaware.  *In re Link_A_Media*,  662 F.3d 1221.  Because VMware has its principal place of business in the Northern District of California, and therefore resides in that district, venue is also proper the Northern District of California.  35 U.S.C. § 1400(b).

2.   Under *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995), the transfer factors weigh in favor of the Northern District of California as the proper venue for this action. VMware's global headquarters is located in Palo Alto, California, in the Northern District of California.  Lin Decl. ¶ 2.  Key witnesses are also in the Northern District of California or within the 100 mile subpoena reach of that district, as are sources of proof and the accused GemFire servers themselves.  Id. ¶¶ 3-4.

3.   Though MOSAID's original choice of forum was Delaware, this choice should receive less deference in the transfer analysis given that Delaware is not MOSAID's "home turf." *Virgin Wireless, Inc. v. Virgin Enterprises, Ltd.*, 201 F.Supp. 2d 294 (D. Del. 2002). MOSAID is a Canadian company whose principal place of business in the United States is Plano, Texas.  MOSAID has no connection to Delaware and its original choice of forum does not weigh heavily against the balance of the transfer factors.

4.   Where a clearly more convenient forum exists, as it does here, the action should be transferred under 28 U.S.C. § 1404(a).

## IV.    STATEMENT OF FACTS

MOSAID is a Canadian corporation with its principal place of business in Ottawa, Ontario.  *See* D.I. 1 at ¶ 1.  MOSAID's principal place of business in the United States is located in Plano, Texas.  *Id.*

VMware is a Delaware corporation with its global corporate headquarters and principal place of business in Palo Alto, California, which is situated in the Northern District of California.  Lin Decl. ¶ 2.  From its headquarters, the company manages its offices in the United States and forty-two other countries around the world.  *Id.*

MOSAID's allegations of infringement against VMware target VMware's activities with respect to VMware's vFabric GemFire Platform and GemFire servers.  In addition to general allegations regarding sales of "software, appliances, and services," MOSAID's First Amended Complaint identifies the "test[ing], demonstrat[ion] and develop[ment] [of] true and accurate technical literature relating to the deployment of the vFabric GemFire Platform and related GemFire servers" as infringing activities.  First Amended Complaint at ¶ 33.  The allegedly culpable conduct occurred, in part, in Northern California, where VMware is headquartered and where VMware employs persons with knowledge about the products at issue, as well persons involved in the advertising and sale of these products.  Lin Decl. ¶ 3.  Certain accused GemFire servers are located in Northern California as well.  *Id.* ¶ 4.

This case is likely to involve a large number of party and third-party witnesses from California.  The face page of the `914 patent (and `049 and `475 patents) identifies the named inventor as Mr. William Michael Pitts ("Pitts"), "of Los Altos, California."  Declaration of Jason K. Yu in Support of Defendant VMware's Motion to Transfer Venue to the Northern District of California ("Yu Decl."), Ex. A. Los Altos is in the Silicon Valley area between San Jose and San Francisco, immediately adjacent to Palo Alto and within the Northern District of California.  The

attorney who drafted the original `914 patent, Stephen Durant, is licensed by the State of California, and identified in the records of the State Bar as practicing in San Jose.  Yu Decl., Ex. S.

Many of VMware's witnesses are similarly located in the Northern District California. Portions of the business unit with responsibility for the GemFire products are located in Palo Alto, at VMware's headquarters.  Lin Decl., ¶ 3.  Correspondingly, certain of VMware's technical and business witnesses and documents are located in Northern California.  *Id*.  In particular, VMware's Senior Director of Research and Development is located in Palo Alto and is presently anticipated to be a company representative concerning topics relating to the accused GemFire technology.[1]  *Id*.  VMware also has identified many third party witnesses, including numerous authors of prior art to the asserted patent, who are located in the Northern District of California.  Yu Decl. Exs. A-U.

Pitt has a history of creating companies and contracting with those companies to transfer his rights in the asserted `914 patent.  Specifically, Pitts created three California business entities and entered into multiple agreements with them.  VMware's Motion to Dismiss for Lack of Standing (D.I. 45) details Pitts' transfer of substantial rights to the first company in this series, Auspex Systems, Inc. ("Auspex"), which divested Pitts of rights to the patent that he later attempted to transfer to his two other companies.  Because MOSAID appears to claim rights to the `914 patent through Pitts' later ineffective transfer, it lacks standing to sue VMware.  To the extent any discovery is deemed necessary on this issue beyond the evidence presented in VMware's Motion to Dismiss, witnesses with knowledge relevant to the standing issue are located in the Northern District of California.  By way of example, while it existed, Auspex was

---

[1] For the most part, members of the GemFire team not located in Northern California are located in Oregon.  Lin Decl., ¶ 3.  Accordingly, most of VMware's witnesses are located on the West Coast, which is substantially closer to the Northern District of California than to Delaware.

headquartered in Santa Clara, California, in the Northern District of California.  Yu Decl., Ex. D.

Auspex declared bankruptcy in 2003, and its assets were acquired by Network Appliance, Inc.

("NetApp"), which itself is headquartered in Sunnyvale, California, in the Northern District of

California.  *Id*., Ex. F.  Inca Technology, Inc, ("Inca"), to whom Pitts later assigned additional

rights in the `914 Patent, is likewise organized under the laws of California and lists its

headquarters as located in Palo Alto, California, in the Northern District of California.  *Id*., Ex.

D.

    Another company to whom Pitts assigned his patent rights, Network Caching

Technology LLC ("NCT"), was a Virginia Limited Liability Company that had offices in Palo

Alto, California.  *Id*., Ex. E.  NCT asserted the `914 patent in an action in the U.S. District Court

for the Northern District of California entitled *Network Caching Technologies v. Novell et al*,

Case No. C-01-2079-VRW (N.D. Cal.).  Witnesses identified in that litigation, including those

affiliated with Auspex, Inca, and NCT, as well as individuals who were the authors or inventors

of  prior art relating to Pitts early work in caching technologies, are all believed to reside in

California, including within the Northern District of California.  Yu Decl. Exs. A-U.

## <u>ARGUMENT</u>

## V.    THIS ACTION BELONGS IN THE NORTHERN DISTRICT OF CALIFORNIA

    VMware respectfully requests that the Court transfer this action to the Northern District

of California.  In its Complaint, MOSAID asserts that venue is proper under 28 U.S.C. §§

1391(b), 1391(c) and § 1400(b).  First Amended Complaint, ¶ 12.  Under those same venue

provisions, venue is also proper in the Northern District of California, because VMware has its

principal place of business in that district, and therefore resides in that district.  Lin Decl. ¶ 2.

    Venue is also proper under the specific patent venue provision because a number of the

allegedly infringing activities occurred in the Northern District of California.  *Id.* ¶ 3; 35 U.S.C.

§ 1400(b); *see also Ballard Med. Prods. v. Concord Labs., Inc.*, 700 F. Supp. 796, 798 (D. Del. 1988).  Additionally, the named inventor on the `914 patent (as well as the `049 and `475 patents identified in the proposed Second Amended Complaint) is located in Northern California, VMware's global headquarters are located in Northern California, and VMware's witnesses and documents are in Northern California.  Lin Decl. ¶ 2-4.

28 U.S.C. § 1404(a), which governs change of venue and provides a vehicle for this Court to transfer this case to the Northern District of California, states as follows:

> (a)  For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The decision to transfer a case is subject to the Court's discretion.  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).  While Third Circuit authority provides that this Court should not grant a motion to transfer unless the "balance of convenience" weighs "strongly" in favor of transfer, *see Shutte*, 431 F.2d at 25, the inquiry in the Third Circuit about whether to transfer a case is a broad one and involves the examination of "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum."  *Jumara*, 55 F.3d at 879 (*quoting* 15 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS § 3847 (2d. ed. 1986)); *Nilssen v. Everbrite, Inc.*, No. 00-189, 2001 WL 34368396, at *1 (D. Del. Feb. 16, 2001) ("When determining whether or not transfer is warranted under the circumstances, district courts must balance **all** of the relevant factors." (emphasis added)).

Here, these factors overwhelmingly favor transfer to the Northern District of California, and none favor leaving the matter venued in the District of Delaware.

A.      **When A Clearly More Convenient Forum Exists, The Action Should Be Transferred Under 28 U.S.C. § 1404(a)**

As the Third Circuit has explained, Section 1404(a) "was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 750 (D. Del. 2012) ("Intellectual Ventures") (quoting *Jumara*, 55 F.3d at 88). The burden rests on the party seeking transfer to demonstrate that "a balancing of proper interests weighs in favor of the transfer." *Intellectual Ventures*, 842 F. Supp. 2d at 750 (quoting *Shutte*, 431 F.2d at 25); *see also In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. Dec. 2, 2011) (ordering transfer from Delaware to California, where events occurred and witnesses were located notwithstanding incorporation in Delaware).

*Jumara v. State Farm Ins. Co.* sets forth the legal standard for determining whether to transfer venue pursuant to § 1404(a). 55 F.3d at 879-80. This inquiry involves examining both private and public interest factors to determine whether, on balance, the litigation would more conveniently proceed and the interests of justice would better be served by a transfer to a different forum. The private interest factors include:

> (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses — but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.*. The public interest factors to consider include:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local

> controversies at home; and (5) the familiarity of the trial judge
> with the applicable state law in diversity cases.

*Id.*  In this case, the *Jumara* factors confirm that the balance weighs in favor of transferring this action to the Northern District of California.

### B.    The Private And Public Factors Favor Northern California

### 1.    Plaintiff's Original Choice of Forum

Although a plaintiff's original choice of forum may carry significant weight in the transfer analysis, a plaintiff's venue preference receives less deference if the venue is not its principal place of business or "home turf."  *Virgin Wireless, Inc. v. Virgin Enterprises Ltd.*, 201 F. Supp. 2d 294, 200 (D. Del. 2002) ("Virgin Wireless").   "When the plaintiff has chosen the home forum, it is reasonable to assume that the choice is convenient; but when the plaintiff or real parties in interest are foreign, this assumption is much less reasonable, and the plaintiff's choice deserves less deference."  *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 256 (1981).  Indeed, as the Third Circuit counseled in *Dahl v. United Technologies Corp.*, 632 F.2d 1027, 1032 (3d Cir. 1980), when Courts balance the *forum non conveniens* public and private interest factors, it is improper to rely solely upon the fact that the defendant is incorporated in Delaware if the plaintiff is a foreign entity:

> All of the plaintiffs are Norwegian citizens.  The only contact that
> Delaware has with this case is that it is [the defendant's] state of
> incorporation.   Indeed, [the defendant's] principal place of
> business is in Connecticut.   We therefore conclude that the
> commitment of Delaware judicial time and resources to this case is
> not justified by any nexus Delaware has with what is essentially a
> Norwegian case.

*Cf. In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010).  In *In re Link_A_Media Devices Corp.*, the Federal Circuit reiterated this principle when it ordered transfer of an action from a foreign

plaintiff's chosen forum of Delaware, granting "less deference" to the plaintiff's choice. 662 F.3d at 1223.

MOSAID is a Canadian corporation with its principal place of business in Ottawa, Ontario. *See* First Amended Complaint ¶ 1. MOSAID's principal place of business in the United States is located in Plano, Texas. *Id.* MOSAID cannot claim "home turf" in Delaware. Moreover, as a foreign plaintiff, MOSAID's choice of forum "deserves less deference" and, therefore, weighs less heavily in the transfer analysis. *See Piper Aircraft Co. v. Reyno,* 454 U.S. at 256.

When considering the plaintiff's choice of venue, "the court should not consider simply the *fact* of that choice, but the *reasons* behind that choice. If those reasons are 'rational and legitimate' then they will weigh against transfer …. On the other hand, where a plaintiff's choice of forum is arbitrary, irrational, or selected to impede the efficient and convenient progress of a case, it should not be afforded substantial weight." *Pragmatus AV, LLC v. YahooA Inc.*, No. 11-902-LPS-CJB, 2012 WL 4889438, at *4 (D. Del. Oct. 15, 2012) (internal citations omitted).

MOSAID's choice of Delaware was simply a tactical one designed in the eleventh hour to beat the effective date of the America Invents Act's joinder rules by suing several unrelated companies whose only common element was incorporation in Delaware. MOSAID chose Delaware out of gamesmanship, not rational, legitimate concerns. Suing several unrelated companies at once is the definition of impeding the efficient progress of a case, and was convenient only for MOSAID, who has no presence in Delaware, or in the United States at all. VMware is now the sole remaining defendant, and MOSAID's original reason for choosing Delaware as a forum (however improper that reason) is no longer relevant.

### 2.      Defendant's Preference of Forum

In weighing the defendant's preference of forum, a court should consider "the disruption to a corporate party's business caused by the prolonged absence of key employees having to attend a trial in a district away from the corporate headquarters, and the relative financial means of the parties." 17 JAMES WM. MOORE, ET AL. MOORE'S FEDERAL PRACTICE § 113.13[1][c][ii] (3d ed. 1997). VMware prefers to litigate this case in the Northern District of California, where VMware and its counsel are located.  Relevant witnesses, documents, and evidence relating to VMware's accused GemFire products are expected to be located in the Northern District of California.  Lin Decl. ¶ 3-4.  As described in greater detail below, a multitude of relevant third party witnesses are located in Northern California, including the named inventor of the `914 patent and prior art witnesses.  Yu Decl. Exs. A-U.  VMware prefers to litigate and try this case in close proximity to the evidence and individuals involved, and in close proximity to its principal place of business. These factors weigh in favor of transfer.  *See, e.g., Pragmatus AV, LLC v. YahooA Inc.*, 2012 WL 4889438, at * 6 (finding that defendant's principal place of business and location of employees with relevant knowledge validated a preference as to forum). As a practical matter, the costs to VMware and the distraction to its employees from this meritless action will be reduced if the litigation is conducted in Northern California; they will be exacerbated by continuing this litigation in Delaware.

### 3.      Location Where the Claim Arose

MOSAID's allegations of infringement against VMware stem from VMware's activities with respect to making, using, offering to sell, and selling its GemFire products.  *See generally* 35 U.S.C. § 271(a).  Here, in addition to sales of "software, appliances, and services," MOSAID's First Amended Complaint identifies the "test[ing], demonstrat[ion] and develop[ment] [of] true and accurate technical literature relating to the deployment of vFabric

GemFire Platform and related GemFire servers" as infringing activities.  First Amended

Complaint at ¶ 33.  VMware's accused infringement includes conduct that took place in Northern

California, where VMware is headquartered..  Lin Decl. ¶ 3.  Specifically, the servers that deliver

GemFire as a final product to the customer reside in Northern California.  *Id*. ¶ 4.  Sales

activities, as well as marketing and sales decisions, also occurred, in substantial part, in Northern

California.  *See Id.* ¶ 3; *Ricoh Co. v. Honeywell, Inc.,* 817 Supp. 473, 481-82 n.17 (D.N.J. 1993)

("Also relevant is the place where marketing and sales decisions were made . . .").

Because many of the operative acts of alleged infringement occurred in Northern

California, this factor overwhelmingly favors transfer, since none of the events underpinning this

action occurred in Delaware.  *See Pragmatus AV, LLC v. Yahoo! Inc.*, 2012 WL 4889438, at * 8

(citing *Altera*, 842 F,Supp.2d at 755) (finding that operative acts of infringement occurred in the

Northern District of California, where the product was "made" and "used," and not Delaware,

where the product was simply distributed as a result of national distribution efforts).

### 4.  Convenience of the Parties

The convenience of parties also favors transfer.  As described above, MOSAID is a

Canadian corporation with principal place of business in the United States in Texas.  Litigating

this case in Delaware as opposed to in California would have no appreciable effect on MOSAID

or its ability to continue conducting its regular business.  Indeed, MOSAID is a serial litigator in

possession of thousands of patents.  It is well accustomed to the burdens of repeated travel in the

course of litigation.

On the other hand, being forced to litigate this case in Delaware as opposed to California

would prejudice and greatly inconvenience VMware.  It would be much more convenient for

VMware's representatives to litigate this dispute in the Northern District of California, where

VMware, its anticipated witnesses and its counsel are located.  Lin Decl. ¶ 5; *see also General*

*Instrument Corp. v. Mostek-Corp.*, 417 F. Supp. 821, 824 (D. Del. 1976) (granting transfer to venue near defendant's headquarters so its "officers and employees would be able to conduct company business while the trial was going on").  Relevant VMware representatives are in California, evidence is in California, and the accused servers are in California.  Because MOSAID does not have a significant business presence, major offices, or a principal place of business in Delaware, its representatives must travel regardless of whether the action proceeds in Delaware or California.

Though VMware is incorporated in Delaware, this does not suggest that it is convenient for VMware to litigate in the state.  A party's state of incorporation is not one of the factors listed in Section 1404 or in *Jumara,* and does not determine the convenience of a party litigating in that state.  When "an alternative forum is more convenient and has more substantial connection with the litigation, incorporation in Delaware will not prevent transfer."  *APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393 (D. Del. 2002) (quotations and citations omitted).  *Accord Angiodynamics, Inc. v. Vascular Solutions, Inc.*, No. 09-554-JJF, 2010 WL 3037478, at *2 (D. Del. Jul. 30, 2010); *Boram Pharm. Co., Ltd. v. Life Tech. Corp.*, No. 10-31, 2010 WL 2802727, at *1 (D. Del. Jul. 14, 2010); *QinetiQ Ltd. v. Oclaro, Inc.*, No. 09-372-CJAP, 2009 WL 5173705, at *3 (D. Del. Dec. 18, 2009);  *Affymetrix, Inc. v. Syntenti, Inc.*, 28 F. Supp. 2d 192, 198-99 (D. Del. 1998).

In *In re Link_A_Media Devices Corp,* the Federal Circuit affirmed this principle, finding it would be inappropriate for a court to place "heavy reliance" on a party's state of incorporation such that it became "dispositive" in the venue transfer analysis.  662 F.3d at 1223–24.  Indeed, the facts of *Link_A_Media*  closely match those at issue here:  a foreign plaintiff sued a Delaware corporation with headquarters in Northern California and the court determined that transfer of

venue to Northern California was proper given the strong connection of the case to the alternate venue.  *Id.  See also Arrow Communication Labs., Inc. v. John Mezzalingua Assoc., Inc.*, No. 05-357-SLR, 2005 WL 2786691, at *2 (D. Del. 2005) (deeming it relevant to the transfer analysis that plaintiff, like defendant, had its headquarters in the Northern District of New York, even though the defendant was incorporated in Delaware).

        In light of the neutral impact of transfer on MOSAID and the significant impact of transfer on VMware, this factor also weighs strongly in favor of transfer.

## 5.      Convenience of Witnesses

        The convenience of the witnesses is the most important factor in venue transfer analysis. *Mentor Graphics v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 510 (D. Del. 1999); *Nilssen v. Everbrite,* No. 00-189-JJF, 2001 WL 34368396, at *2 (D. Del. Feb. 16, 2001).  Where third party witnesses are concerned, "[a] party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power."  *Nilssen v. Everbrite*, 2001 WL 34358396, at *2.  *See also Meikki Co., Ltd. v. Facebook, Inc.*, No. 09-745 (JAP), 2010 WL 2348740, at *4 (D. Del. Jun. 7, 2012) (transferring venue and noting that "Defendant acknowledges there may be potential non-party witnesses located in California which would be subject only to the subpoena power of that Court").

        Here, a great number of third party witnesses are known to work or reside in the Northern District of California and are not subject to the trial subpoena power of this Court.   The named inventor of the `914 patent (and `049 and `475 patents) is third party William Pitts ("Pitts"), who the patent describes as residing in "Los Altos, California." Yu Decl. Ex. A; *see also Id.* Ex. B. Pitts is beyond the subpoena power of this Court, a factor that strongly favors transfer.  *See Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597, 602-03 (D. Del. 2012) ("convenience of the

witnesses favors transfer" where "[n]o witnesses from Delaware have been identified and …
[third parties] would not be subject to this Court's subpoena power…"); *In re Genentech, Inc.*,
566 F.3d 1338, 1345 (Fed. Cir. 2009) ("[t]he fact that the transferee venue is a venue with usable
subpoena power here weighs in favor of transfer, and not only slightly").  Likewise, the attorney
originally hired to write the applications that matured into the `914 and related patents, Stephen
Durant, is licensed by the State of California, and identified in the records of the State Bar as
practicing in San Jose, California.  Yu Decl. Ex. S. Third party witnesses concerning MOSAID's
lack of standing to assert the `914 Patent also reside in the Northern District of California.
VMware's Motion to Dismiss for Lack of Standing details Pitts' history of forming companies
that are third parties to this dispute, namely Auspex, Inca  and NCT.  D.I. 45.  As detailed in
VMware's Motion to Dismiss, Pitts first transferred substantial rights in the `914 Patent to
Auspex, which divested Pitts of rights in the `914 Patent that he later purported to transfer to his
other companies Inca and NCT.  Pitts formed two of the three companies (Auspex and Inca) as
California entities with principal addresses in Santa Clara and Los Altos, and NCT's officed
were located in Palo Alto, California.  Yu Decl. Exs. C-E.  Santa Clara, Los Altos, and Palo Alto
are all, respectively, within the Northern District of California.  Auspex was subsequently
acquired by NetApp which is headquartered in Sunnyvale, California, within the Northern
District of California.  *Id.* Ex. F.  Attorneys from San Francisco-based Coblentz, Patch, Duffy,
and Bass, LLP advised NCT and Jane Mitchell concerning Pitts' purported transfer of rights to
NCT.  *Id*. Ex. G.  Accordingly, to the extent any discovery is necessary on the standing issue,
documents and witnesses will reside in the Northern District of California, including documents
and witnesses from Auspex, NetApp, Inca and NCT, attorneys from Coblentz Patch, Jane
Mitchell and Pitts himself.

NCT's 2001 lawsuit asserting the `914 patent against Inktomi and others took place in the Northern District of California.  Inktomi was acquired by Yahoo! in 2002.  *Id.* Ex. H.  Yahoo! is headquartered in Sunnyvale, California, within the Northern District of California.  *Id.* Ex. I.  Similarly, Juniper Networks, Inc. and Blue Coat Systems, Inc., licensees of the asserted patents, are both headquartered in Sunnyvale, California.  *Id.* Ex. J, K.  This Court's subpoena powers do not reach these three licensees of the asserted patents, who may be reticent to provide testimony concerning sensitive financial issues such that they would likely not appear without a subpoena.  However, they could be compelled to testify in the Northern District of California.

Many third-party prior art witnesses for the asserted patents are also located in California, as follows:

- A particularly important prior art reference in the prior NCT-Inktomi (Yahoo!) litigation was "DNS," authored by Paul Mockapetris.  Mr. Mockapetris is Chairman and Chief Scientist at Nominum, which is based in Redwood City, California, within the Northern District of California.  *Id.* Ex. L, M.  DNS was the basis for inequitable conduct allegations by Inktomi, which further increases its importance as prior art and the likelihood of needing a subpoena to procure live testimony by Mr. Mockapetris at trial.

- Auspex (the Pitts company discussed above) and its acquirer NetApp, are also Northern California sources of prior art.  *Id.* Ex. C, F. Pitts was an Auspex engineer and one of his early Auspex designs that predated the `914 patent is at issue in this dispute as invalidating prior art.

- Pitts cited the "Harvest Cache" in papers as being relevant to the patented technology.  Peter Danzig, the creator of the "Harvest Cache," is located in

Northern California as the Co-Founder and Chief Strategy Officer at Virtuata, Inc., located in Milpitas, California. *Id.* Ex. N, O.

- Pioneering prior art in distributed cache systems like "Sprite" was developed at the University of California at Berkeley. Sprite's authors Michael N. Nelson, Brent B. Welch and John K. Ousterhout are believed to be located in the Northern District of California. *Id.* Ex. P, Q, R.

- As noted, the attorney responsible for drafting the original application that matured into the `914 Patent, Steven Durant, resides in the Northern District of California.[2] *Id.* Ex. S.

- NCT asserted U.S. Patent No. 6,085,234 against Inktomi, which is a continuation-in-part of the `914 Patent. Co-inventors on this `234 Patent include Joel R. Rigler ("Rigler"), who may have knowledge of the inventive content of the `914 Patent and who is located in Northern California. *Id.* Ex. U.

- Rigler was also a principal of Pitts' Los Altos, CA based company Inca Technology, Inc., which Pitts has claimed was first to implement the patented technology in its products. *Id.* Ex. D. Accordingly, Rigler and Inca are all relevant third party prior art witness.

Because these prior art witnesses are not a party to this lawsuit, they are outside the subpoena powers of this Court, though well within the reach of a Northern California court.

---

[2] Attorney Donald Schrieber, who took over for Stephen Durant and prosecuted the `914 patent, resides in Kings County, CA, just outside the Northern District of California and 2,000 miles closer to the Northern District of California than Delaware. Yu Decl. Ex. T.

Conversely, MOSAID has not identified a single witness who is located in Delaware, another fact favoring transfer. *In re Genentech, Inc.*, 566 F.3d at 1345. Given these practical realities, this factor weighs in favor of transfer.

### 6. Location of Books, Records and Evidence

As discussed above, many of VMware's books, records, servers and evidence that may be subject to discovery in this dispute are located in the Northern District of California, where VMware is headquartered. Because the "bulk of the relevant evidence usually comes from the accused infringer" in patent cases, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id*. In this case, documents relating to the marketing and sales of VMware's accused products, as well as servers hosting the GemFire websites are maintained on servers in Northern California. Lin Decl. ¶ 4. The accused GemFire servers responsible for delivering the GemFire Product to customers are also located in Palo Alto.[3] *Id.* ¶ 4. *See In re Link_A_Media*, 662 F.3d at 1223 ("[w]hile advances in technology may alter the weight given to [the convenience of the witnesses and location of records], it is improper to ignore them entirely.") VMware also expects prior art evidence to be located in California, as noted above. As to any MOSAID evidence, it is most probably in Canada or Plano, Texas. It seems unlikely that *any* evidence relevant to this action will come from Delaware.

This factor also weighs strongly in favor of transfer.

### 7. Enforceability of Judgment

Judgments rendered by this Court and the Northern District of California are equally enforceable. This factor is neutral.

---

[3] For the most part, all relevant servers not located in Northern California are located in Oregon or Washington. Lin Decl., ¶ 4. Accordingly, nearly all the relevant information is located on the West Coast. Little or no information, is located in Delaware. *Id.* ¶ 3-4.

### 8.     Practical Considerations

Practical considerations that could make trial "easy, expeditious, or inexpensive" also weigh in favor of transfer.  This factor substantially overlaps with factors discussed above, in that courts weigh practical considerations such as the action's ties to the proposed venue. "[J]udicial economy will be served" when litigation is conducted where the relevant "documents, witnesses, and discovery" are located.  *Walters v. Beavers*, No. 89-696-JJF, 1991 U.S. Dist. LEXIS 1432, at *18 (D. Del. Feb. 6, 1991).  In this case, judicial economy will be best served if the litigation is conducted in Northern California.  As noted above, the bulk of the relevant documents, witnesses, and discovery are located in Northern California.

Moreover, the Northern District of California is already familiar with litigation involving the `914 Patent.  *Network Caching Technology, LLC v. Novell, Inc.*, et al., No. C-01-CV-2079 (VRW), a case litigated from 2001-2003 in the Northern District of California, also involved the `914 patent.  As this matter has not progressed far in this venue, practical considerations weigh in favor of transfer to the forum with prior experience with the same asserted patent.  *See Kondrath v. Arum*, 881 F. Supp. 925, 931 (D. Del. 1995) (finding in favor of transferring the case where "little judicial effort will go to waste by transferring it.").

This factor weighs strongly in favor of transfer.

### 9.     Court Congestion

The Northern District of California has already litigated a similar case involving the `914 patent, which may streamline resolution in that venue.  This factor therefore weighs slightly in favor transfer.

### 10.     Local Interest and Public Policy

Although patent cases often involve issues of national scope, California has a local interest in this particular case, whereas Delaware has no local interest to this case.  The named

inventor of the patent-in-suit is a Northern California resident, VMware is headquartered in Northern California, and the patent-in-suit has been previously litigated in the Northern District of California.  As such, this factor weighs in favor of transfer.

### 11.     Familiarity With Applicable State Law in Diversity Cases

This factor is inapplicable because this case is not based on diversity jurisdiction, nor does it implicate state laws.  This is a suit for patent infringement and involves the laws of the United States, which are uniformly applied in both Delaware and California.  Therefore, this factor is neutral.

### 12.     Balancing of Factors

On balance, the public and private factors weigh strongly in favor of transfer to the Northern District of California.  Documents, witnesses, and other evidence, are in large part located in the Northern District of California; litigating the case in the Northern District of California would not unreasonably inconvenience MOSAID; and, cumulatively, it is the more convenient forum.  This is particularly true given that all other defendants originally named in this suit have settled. While Delaware may have been an appropriate venue at the outset of this action—given that the only commonality among the defendants was that they were all incorporated in Delaware— the case has significantly narrowed in the intervening year.  It is no longer in the interest of the parties or the public to maintain the suit in Delaware.  Therefore, the Court should transfer venue to the Northern District of California.

### <u>CONCLUSION</u>

For the foregoing reasons, the court should transfer this case to the Northern District of California.

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*Of Counsel:*

**ORRICK, HERRINGTON &
SUTCLIFFE LLP**
I. Neel Chatterjee
Karen G. Johnson-McKewan
Monte M.F. Cooper
Stacey E. Stillman
Jason K. Yu
1000 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 614-7400

Dated: December 17, 2012

*/s/ Pilar G. Kraman*
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Attorneys for VMware, Inc.*

01:13020756.1

## CERTIFICATE OF SERVICE

I, Pilar G. Kraman, Esquire, hereby certify that on December 17, 2012, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard D. Kirk, Esquire
> Stephen B. Brauerman, Esquire
> Bayard, P.A.
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899-5130
> *rkirk@bayardlaw.com*
> *sbrauerman@bayardlaw.com*
>
> *Attorneys for Plaintiff*

I further certify that on December 17, 2012**,** I caused a true and correct copy of the foregoing document to be served by e-mail on the above-listed counsel of record.

> YOUNG CONAWAY STARGATT
> &  TAYLOR, LLP
>
> /s/ *Pilar G. Kraman*
> _____
> Adam W. Poff (No. 3990)
> Pilar G. Kraman (No. 5199)
> Rodney Square
> 1000 North King Street
> Wilmington, Delaware  19801
> pkraman@ycst.com
>
> *Attorneys for Defendant VMware Inc.*